NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

HOMER M. DAVIS, PETITIONER, v. RICHARD E. O'DEA—
O'DEA TEMPLE OF MUSIC, RESPONDENT.

It appears by the petition of Homer M. Davis that his son, Harold Willard Davis, on the 12th day of May, 1927, was engaged as a chief radio operator for the respondent at Paterson, New Jersey, and on that day was changing the radio station of the respondent from a lower power to a higher power station, and while so engaged, and changing connections on live wires, he became electrocuted and died immediately.

It appears from the evidence that the deceased, at the time of his employment, and immediately prior to his death, was a robust youth, twenty-two years of age, and was living with his father, mother and sister at 457 East Thirty-fifth street, in the city of Paterson.

The petitioner now comes to this bureau in behalf of himself and wife, and claims compensation on the theory of dependency under the statute in such case made and provided, but the respondent, while not denying liability, denies *in toto* that there was any dependency by the petitioner or his wife.

On formal hearing, it appeared from the testimony that the deceased made $44 a week regularly, and contributed

towards the home $35 a week; that he bought his own clothing and was getting two meals a day home, and also lodging. There was also testimony that the father's earnings and the son's earnings were put in the common household fund, together with that of a sister, towards the support of the entire family of four.

The mother and sister testified that she purchased from the household fund the clothing for herself, her husband and her daughter, who is twenty-one years of age. That she also used the moneys for paying off the mortgage on the house which amounted to $75 a month, and which house was purchased about six months before the death of the deceased. That she also paid the taxes from this fund, which amounted to $193 a year. That she also paid water bills, which amounted to $12 a year, and that she also paid the telephone bills and also the sum of $54 a month interest on the first and second mortgages, which amounted together in the sum of $9,000.

The evidence showed that the house cost the petitioner and his wife $10,500, upon which there was a first mortgage of $5,000, and a second mortgage of $4,000, and that immediately subsequent to the death of the deceased, the petitioner and his wife, through necessity, sold the house for $9,300, because they were unable to continue the upkeep of such home, due to the failure of the weekly earnings of the deceased, to be contributed towards the common household fund.

I am satisfied that there is ample evidence that the cost of lodging and food given to the deceased, by his mother, amounted to no more than $15 a week, and that his mother actually was dependent upon his earnings, but I am not satisfied that the petitioner is actually dependent upon the earnings of the deceased, and the dependency in his case will be denied.

The petitioner and his family are entitled to maintain that station of life which they were accustomed to, and which was warranted by the good income which was derived from the pool of money to which the various members of the family contributed weekly, although it cannot be said that

there is actual dependency where the money or part of the money derived from the common fund is used for an investment, but the facts in this case did not show any investment, and the $75 a month which was paid by the mother of the deceased towards paying off the mortgages only amounted to the payment of rent, and could not be called an investment, and it was also proven that the family of the deceased had no bank account, and that they lived in that station of life which they could afford, from the income derived from the common household fund.

The family protection involved in such saving or such expenditure was reasonable according to the station of life of the claimant, and will be held to be legitimate family expenditures. They are not the savings for investment, but rather the provision of thrift for the family protection against the contingencies of death, ill-health, lessening earning power, or lessening work to be had, and the evidence in the case does not show that the savings went beyond these reasonable bounds, but were relatively small compared to the income derived weekly.

I will therefore order that the respondent pay to the dependent, Addie I. Davis, the sum of $150 as funeral expenses, and compensation for three hundred weeks at the rate of $7 a week, being thirty-five per cent. of $20, which I find is supported by the evidence submitted, and to which sum this dependent actually depended upon weekly; and that the sum of $224 be paid to said dependent, in a lump sum, being thirty-two weeks since the date of death of the deceased, and which is now due; and that the respondent pay to Louis C. Friedman, attorney for the petitioner, $100 as a counsel fee, and the dependent, Addie I. Davis, pay $50 as a counsel fee to her attorney.

HARRY J. GOAS,
*Deputy Commissioner.*